1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   GRH KAYSVILLE, LLC and JASON
     HAWKINS HOLDINGS, LLC,
12                                        No. 2:07-CV-00440-MCE-GGH
             PlaintiffS,
13
         v.                               MEMORANDUM AND ORDER
14
     OROVILLE PLAZA COMPANY,
15   OROVILLE PLAZA SHOPPING
     CENTER, L.P., and ALBERT B.
16   GLICKMAN & ASSOCIATES,

17           Defendants.

18                        ----oo0oo----

19

20       Before the Court are Plaintiffs' Motion for Summary Judgment

21   and Motion for Preliminary Injunction.  Because the two motions

22   raise similar issues, both are dealt with in this Order.[1]  This

23   diversity case involves a dispute between a landlord and a tenant

24   as to the interpretation of various leases relating to a shopping

25   center.

26   _____

27       [1] Because oral argument will not be of material assistance,
     the Court orders this matter submitted on the briefs.  E.D. Cal.
28   Local Rule 78-230(h).

                                   1

1

## BACKGROUND

2

3      On November 6, 1978, Albertson's, Inc. ("Albertson's"),
4  entered into a ground lease with Oroville Plaza Company
5  ("Defendant"), which, pursuant to several lease amendments, now
6  covers approximately 43,423 square feet of land ("Albertson's
7  Ground Lease") at the Las Plumas Plaza Shopping Center (formerly
8  known as Oro Dam Plaza) (the "Shopping Center").  Plaintiffs, GRH
9  Kaysville, LLC and Jason Hawkins Holdings, LLC (collectively,
10  "Plaintiffs"), are successors-in-interest to Albertson's, are
11  tenants under the Albertson's Ground Lease, and own the retail
12  building thereon (the "Albertson's Premises").  In February 2005,
13  Plaintiffs sublet a portion of the Albertson's Premises to Big 5
14  Sporting Goods.  The remainder of the Albertson's Premises
15  remains vacant, as it has been for the last eight years.

16      In September of 1978, Defendant entered into a lease with
17  K-Mart for a portion of the Shopping Center (the "K-Mart
18  Premises").  Section 22 of that lease provides that "[t]he
19  [K-Mart Premises] may be used for any lawful purpose. [K-Mart]
20  may assign this lease or sublet the whole or any part of the
21  demised premises."

22      Later that same year, in November of 1978, Defendant entered
23  into the Albertson's Ground Lease.  The pertinent portions of
24  that lease provide that: (1) no part of the Shopping Center other
25  than the Albertson's Premises shall be used as a supermarket
26  (§ 13.1); (2) nothing in the Albertson's Ground Lease shall
27  prohibit K-Mart or its assignees or successors in interest from
28  using the K-Mart Premises for any lawful purpose (§ 13.2);

1  (3) the Albertson's Premises may not be used in any manner which

2  conflicts with a prior exclusive granted by Defendant to any

3  other tenant in the Shopping Center (§ 13.7); and (4) Albertson's

4  may assign or sublease the whole or any portion of the

5  Albertson's Premises (§ 16.1).

6      In June of 1999, K-Mart assigned its interest in the

7  Shopping Center to the Fleming Companies, doing business as

8  Food 4 Less ("Fleming").  Sometime in early 2001, Albertson's

9  ceased operations.  In February of 2003, Save Mart, doing

10  business as Food Maxx ("Save Mart"), assumed the K-Mart lease

11  from Fleming.

12      During the last quarter of 2003, Defendant negotiated with

13  several companies regarding the Albertson's Premises.  The record

14  reflects that Defendants communicated with Big Lots and with 99¢

15  Only Stores regarding the Albertson's Premises.

16      In September 2004, Defendant and Save Mart entered into an

17  agreement regarding the K-Mart Lease.  Section 13 of that

18  agreement provides:

19        Landlord hereby agrees not to directly or indirectly
        own or operate, directly grant any lease or directly
20       permit any assignment or sublease of a store in the
        Shopping Center for use as a supermarket ....  Tenant
21       acknowledges that the Lease dated November 6, 1978
        between Oroville Plaza Co. and Albertson's, Inc. as
22       amended from time to time (the "Albertson's Lease")
        permits the operation of a supermarket and that the
23       foregoing restriction shall not apply to the
        Albertson's Lease or to the premises to which it
24       relates (the "Albertson's Premises"), so long as the
        Albertson's Lease is in effect.  Landlord has no
25       obligation whatsoever to prohibit use of the
        Albertson's Premises for the purposes described in the
26       first sentence of this Paragraph 13, nor shall Landlord
        have any liability for the use of the Albertson's
27       Premises for such purposes.

28

1
2
3
4
5
6

> Notwithstanding the foregoing, Landlord will, if
> permitted under the Albertson's Lease, refrain from
> giving its consent or approval to any activity which
> would expand or extend the current existing provisions
> of the Albertson's Lease permitting such use, provided
> nothing contained in this Paragraph 13 shall require
> Landlord to take any action or refrain from taking any
> action which, in Landlord's sole and absolute but good
> faith discretion would constitute a default, breach or
> other violation of Landlord's obligations under the
> Albertson's Lease.

7  In February of 2005, Plaintiffs assumed the Albertson's

8  Lease.  In April and May of 2005, representatives for Plaintiffs

9  and Defendants began discussing the possibility of Plaintiffs

10 subleasing a portion of the Albertson's Premises to Big Lots.

11 The parties disputed the application of the exclusive use granted

12 to Save Mart to the operation of a grocery store in the

13 Albertson's Premises.  In June of 2006, Plaintiffs entered into a

14 letter of intent with 99¢ Only Stores regarding the sublet of a

15 portion of the Albertson's Premises.  In July of 2006, Defendants

16 contacted Save Mart regarding negotiating a use provision for 99¢

17 Only Stores that would be mutually acceptable to both Save Mart

18 and 99¢ Only Stores.

19 In July 2006, Plaintiffs sublet a portion of the Albertson's

20 Lease to Big 5.  In September 2006, in conjunction with

21 Plaintiffs' proposed assignment to 99¢ Only Stores, Defendant

22 executed a nondisturbance and attornment and a certificate of

23 lease.  The certificate of lease provides:

24
25
26
27
28

> Tenant has performed all of its obligations and is not
> in default under the Lease, except that Tenant has
> advised Landlord that it intends to sublease the
> Premises to 99¢ Only Stores and to Grocery Outlet,
> which Landlord has advised Tenant would violate an
> exclusive right granted by Landlord to another tenant
> in the shopping center and would be a breach of
> Tenant's Lease.

4

1    In October 2006, Plaintiffs and Defendant continued
2 discussions regarding the exclusive use provisions in the Save
3 Mart lease and other issues related to the management and
4 development of the Shopping Center.  In February 2007, Defendant
5 continued discussions with Save Mart regarding a mutually
6 acceptable use restriction for 99¢ Only Stores.

7    Plaintiffs now allege that as a result of Defendants'
8 actions, 99¢ Only Stores refuses to execute a sublease and has
9 suspended negotiations until Defendants acknowledge the validity
10 of the transfer.  Plaintiffs' First Amended Complaint asserts
11 causes of action for breach of contract, breach of the covenant
12 of good faith and fair dealing, intentional interference with
13 prospective economic relations, negligent interference with
14 prospective economic relations, injunctive relief, and
15 declaratory relief.

16    By way of their current motions, Plaintiffs seek "entry of
17 summary judgment and a declaration from the Court that the
18 [Albertson's] Ground Lease terms are clear and unambiguous and
19 should be interpreted as a matter of law in favor of Plaintiffs
20 as granting Plaintiffs the unfettered right to sublet the
21 Premises, or any part of it, without [Defendant's] consent for
22 any use so long as it is not a Restricted Use and that Plaintiffs
23 have the unconditional right to operate a supermarket on the
24 [Albertson's] Premises or to sublet the [Albertson's] Premises to
25 a tenant for use as a supermarket."
26 ///
27 ///
28 ///

1   Plaintiffs also seek a preliminary injunction "prohibiting
2   Defendants from interfering with Plaintiffs' rights to sublease a
3   portion of the [Albertson's] Premises to a national tenant for
4   use, in part, as a supermarket" and "prohibiting Defendants from
5   refusing to recognize and confirm to 99¢ Only Stores that the
6   [Albertson's] Ground Lease is in full force and effect and from
7   stating that any sublease of the [Albertson's] Premises to 99¢
8   Stores or a third party for use as a supermarket, in whole, or in
9   part, is an event of default under the [Albertson's] Ground Lease
10  or is void."

11

12                          **STANDARDS**

13  **A.   Motion for Summary Judgment**

14

15      The Federal Rules of Civil Procedure provide for summary
16  judgment when "the pleadings, depositions, answers to
17  interrogatories, and admissions on file, together with
18  affidavits, if any, show that there is no genuine issue as to any
19  material fact and that the moving party is entitled to a judgment
20  as a matter of law."  Fed. R. Civ. P. 56(c).  One of the
21  principal purposes of Rule 56 is to dispose of factually
22  unsupported claims or defenses.  *Celotex Corp. v. Catrett*,
23  477 U.S. 317, 325 (1986).
24  ///
25  ///
26  ///
27  ///
28  ///

                               6

Rule 56 also allows a court to grant summary adjudication on part of a claim. *See* Fed. R. Civ. P. 56(a) ("A party claiming relief may move ... for summary judgment on all or part of the claim."); *see also Allstate Ins. Co. v. Madan*, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); *France Stone Co., Inc. v. Charter Twp. of Monroe*, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. *See* Fed. R. Civ. P. 56; *Mora v. ChemTronics*, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. at 323 (quoting Rule 56).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e).

///

7

The opposing party must demonstrate that the fact in contention
is material, i.e., a fact that might affect the outcome of the
suit under the governing law, and that the dispute is genuine,
i.e., the evidence is such that a reasonable jury could return a
verdict for the nonmoving party. *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 248, 251-52 (1986); *Owens v. Local No. 169,
Assoc. of W. Pulp and Paper Workers*, 971 F.2d 347, 355 (9th Cir.
1987). Stated another way, "before the evidence is left to the
jury, there is a preliminary question for the judge, not whether
there is literally no evidence, but whether there is any upon
which a jury could properly proceed to find a verdict for the
party producing it, upon whom the onus of proof is imposed."
*Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*,
14 Wall. 442, 448, 20 L.Ed. 867 (1872)). As the Supreme Court
explained, "[w]hen the moving party has carried its burden under
Rule 56(c), its opponent must do more than simply show that there
is some metaphysical doubt as to the material facts .... Where
the record taken as a whole could not lead a rational trier of
fact to find for the nonmoving party, there is no 'genuine issue
for trial.'" *Matsushita*, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the
opposing party is to be believed, and all reasonable inferences
that may be drawn from the facts placed before the court must be
drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255.
Nevertheless, inferences are not drawn out of the air, and it is
the opposing party's obligation to produce a factual predicate
from which the inference may be drawn.

///

*Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45
(E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

## B.   Motion for Preliminary Injunction

A preliminary injunction is an extraordinary remedy, and the
moving party has the burden of proving the propriety of such a
remedy by clear and convincing evidence. *See Granny Goose Foods,*
*Inc. v. Teamsters*, 415 U.S. 423, 442 (1974).  In order to warrant
issuance of a preliminary injunction, a party must demonstrate
either: 1) a combination of probable success on the merits and
the possibility of irreparable injury; or 2) that serious
questions are raised and the balance of hardships tips sharply in
favor of granting the requested injunction. *Stuhlbarg Int'l*
*Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839-
40 (9th Cir. 2001).  These two alternatives represent two points
on a sliding scale, pursuant to which the required degree of
irreparable harm increases or decreases in inverse correlation to
the probability of success on the merits. *Roe v. Anderson*, 134
F.3d 1400, 1402 (9th Cir. 1998); *U.S. v. Nutri-cology, Inc.*, 982
F.2d 1374, 1376 (9th Cir. 1985).  Under either formulation of the
test for granting a preliminary injunction, however, the moving
party must demonstrate a significant threat of irreparable
injury. *Oakland Tribune, Inc. v. Chronicle Publ'g. Co.*, 762 F.2d
1374 (9th Cir. 1985).

///

///

///

**ANALYSIS**

**A.   Motion for Summary Judgment**

Plaintiffs move for summary judgment on two issues.  First, Plaintiffs seek an order finding that the assignment and subletting clause is unambiguous.  Second, they seek an order finding that the exclusive use clause is unambiguous.[2]  The interpretation of an unambiguous contract is a matter of law which may be disposed of on a motion for summary judgment. *Jones-Hamilton Co. v. Beazer Materials & Serv. Inc.*, 973 F.2d 688, 692 (9th Cir. 1992).

The assignment and subletting clause in the Albertson's Ground Lease provides:

> Tenant may assign this Lease or sublet the whole or any part of the Leased Premises.  If Tenant assigns this Lease or sublets the Leased Premises, Tenant shall remain liable to Landlord for full performance of Tenants obligations.

The Court agrees with Plaintiffs that the terms of this provision are unambiguous and provide Plaintiffs the ability to sublease or assign any portion of the Premises without the consent of the Defendants.

_____

[2] Although Plaintiffs' Reply brief seeks summary judgment on all the claims raised in their First Amended Complaint, here the Court declines to exercise its jurisdiction to decide these issues. *Glenn K. Jackson v. Roe*, 273 F.3d 1192, 1201-1202 (9th Cir. 2001).  The reply brief raises new issues that have not been fully briefed.  Plaintiffs' new claims turn largely on a document submitted by Defendants.  Although Plaintiffs claim to have never seen this document, they do not claim that it has been withheld from a proper discovery request.  If Plaintiffs chose to bring this motion prior to conducting discovery, then Plaintiffs should bear the brunt of that decision, not Defendants and certainly not this Court.  Therefore, the additional claims raised in the reply shall be disregarded.

1  However, Plaintiffs argue that Defendants attempted to interfere
2  with Plaintiffs' right to assign or sublet the premises by
3  demanding economic concessions in order to obtain their consent
4  and therefore breached the covenant of good faith and fair
5  dealing.  The only evidence Plaintiffs cite to is a letter from
6  Defendants to Plaintiffs wherein Defendants discuss, *inter alia*,
7  the proposed sublease with 99¢ Only Stores, the construction of a
8  pad building in the parking lot of the Shopping Center, and
9  deleting the limit on common area maintenance expenditures.  The
10  text of the letter does not support the *quid pro quo* arrangement
11  that Plaintiffs wish to ascribe to it.

12      The letter is a communication between a landlord and a
13  tenant discussing the possibility of renegotiating certain terms
14  of the lease.  In it, Defendants state that they are willing to
15  waive certain height restrictions in order to keep costs down for
16  a remodel that Plaintiffs were planning.  Defendants state their
17  willingness to work with Plaintiffs in order to come to an
18  agreement with the city regarding the planting of trees in the
19  common area.  Defendants state that they understand Plaintiffs
20  are negotiating a sublease with 99¢ Only Stores and that while
21  Defendants believe that such a sublease would violate an
22  exclusive granted to Food Maxx, Defendants would be willing to
23  work with Plaintiffs, their potential subtenants, and Food Maxx
24  in order to negotiate mutually agreeable terms.  The letter
25  states that although the lease does not provide for sidewalk
26  sales, Defendants are willing to create an area in the common
27  area to allow Plaintiffs tenants to hold sidewalk sales.
28  ///

1  The letter states, "[w]e would like your consent to the

2  constriction of an approximately 6,000 sq. ft. pad building" and

3  "[w]e wish to delete the $2,000 limit on certain CAM expenditures

4  in your lease." Put simply, this is not the *quid pro quo* demand

5  that Plaintiffs allege.

6      In order to succeed on a claim for breach of the covenant of

7  good faith and fair dealing, Plaintiffs have the burden of

8  proving that Defendants unfairly interfered with their right to

9  receive the benefits of the contract. *See* Judicial Counsel of

10  California Civil Jury Instruction 325. Plaintiffs have not met

11  their burden of proof on this issue.

12      The exclusive use provision provides:

13      No part of the Shopping Center other than the Leased
        Premises shall be used as a supermarket, (which shall
14      be defined as any store or department containing at
        least 5,000 square feet of floor area, including aisle
15      space and storage, primarily devoted to the retail sale
        of food for off-premises consumption), a bakery, a
16      delicatessen, nor for the sale of fresh or frozen meat,
        fish, poultry, or produce for off-premises consumption,
17      provided however, a Longs Drug Store may sell those
        items typically sold by other Longs Drug Stores in
18      northern California so long as such items do not
        consist of fresh or frozen: meat, fish, poultry, or
19      produce for off-premises consumption.

20  Plaintiffs argue that the terms of this provision are unambiguous

21  and therefore the Defendants' refusing to acknowledge Plaintiffs'

22  right to sublease to 99¢ Only Stores and demanding that

23  Plaintiffs consent to the building of the outparcel and the

24  increase in the common area maintenance dues has prevented

25  Plaintiffs from enjoying the benefit of their bargain. Again,

26  Plaintiffs have failed to meet their burden of proof.

27  ///

28  ///

12

1   Defendants, as landlord, sent a letter to Plaintiffs, as tenants,

2   discussing the possibility of renegotiating the terms of the

3   lease.  For the same reasons as above, Plaintiffs have not met

4   their burden of proof on this issue and summary judgment is not

5   warranted.

6       Because Plaintiffs have not met their burden of establishing

7   that there is no genuine issue of material fact, Plaintiffs'

8   Motion for Summary Judgment is DENIED.

9

10      **B.    Motion for Preliminary Injunction**

11

12      Irreparable injury and inadequacy of legal remedies are

13  bases to equitable relief such as preliminary injunctions.

14  *Samson v. Murray*, 415 U.S. 61, 88 (1974).  The irreparable harm

15  alleged by Plaintiffs is that they will lose the ability to enter

16  into a sublease with 99¢ Only Stores for a portion of the

17  Albertson's Premises and that Defendants will continue to assert

18  that Plaintiffs have no right to sublet the Albertson's Premises

19  or any part thereof for use as a supermarket.  This is not an

20  irreparable injury.

21      Plaintiffs allege they will suffer an irreparable injury in

22  that they will lose the ability to enter into a sublease with 99¢

23  Only Stores.  However, the real injury they allege is that they

24  will lose rent if they are unable to sublet the property.

25  However, "monetary injury is not normally considered

26  irreparable."  *Los Angeles Memorial Coliseum Commission v.*

27  *National Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980).

28  ///

13

"It is well-settled that monetary injuries are not irreparable and may not be considered in determining whether a preliminary injunction is proper." *Regents of University of California v. American Broadcasting Companies, Inc.*, 747 F.2d 511, 523 (9th Cir. 1984) (*citing Sampson*, 415, U.S. at 90).  Therefore, Plaintiffs' argument that they will lose the ability to sublet the Albertson's Premises is not an irreparable injury which would support a preliminary injunction.

Plaintiffs assert additional irreparable injury in that "Defendants will continue to assert that Plaintiffs have no right to sublet the [Albertson's] Premises or any part thereof for use as a supermarket as permitted under the [Albertson's] Ground Lease.  This harm suffered by Plaintiffs could last until 2053, when the last option of the seventy-five (75) year [Albertson's] Ground Lease term expires."  This argument misses the mark.  "'The purpose of a preliminary injunction is to preserve rights pending resolution of the merits of the case by the trial.'" *E. & J. Gallo Winery v. Andina Licores S.A.,* 446 F.3d 984, 990 (9th Cir. 2006) (quoting *Big Country Foods, Inc. v. Bd. of Educ.*, 868 F.2d 1085, 1087 (9th Cir. 1989)).  Plaintiffs have made no showing that they will suffer irreparable harm during the pendency of this action.[3]

///

///

---

[3] Plaintiffs also argue they have no adequate remedy at law because this is a unique piece of real estate.  If they were attempting to sell the property, that argument may carry some weight.  However, because Plaintiffs are merely trying to lease the property, their harm will be lost rental income and they can be adequately compensated with monetary damages.

1    Because Plaintiffs cannot show any irreparable harm if this
2    preliminary injunction is not granted, this Court need not
3    address the likelihood of success on the merits or the balance of
4    hardships.  Accordingly, Plaintiffs Motion for Preliminary
5    Injunction is DENIED.

6

7                              **CONCLUSION**

8

9    For the foregoing reasons, Plaintiffs' Motion for Summary
10   Judgment is DENIED.  Additionally, Plaintiffs' Motion for
11   Preliminary Injunction is also DENIED.

12

13   IT IS SO ORDERED.

14

15   Dated: March 28, 2008

16

17   _____

18   MORRISON C. ENGLAND, JR.
     UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

15